IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRANT HEILMAN PHOTOGRAPHY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>McGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC, McGRAW-HILL SCHOOL EDUCATION HOLDINGS, LLC,<br><br>Defendants. | Case No.: 19-cv-04741-MMB |

**PLAINTIFF GRANT HEILMAN PHOTOGRAPHY, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
MCGRAW-HILL GLOBAL EDUCATION HOLDINGS'
MOTION TO DISMISS**

## INTRODUCTION

Defendant, McGraw-Hill Global Education Holdings, Inc. ("McGraw-Hill") is a textbook publisher with a long history of copyright infringement. The nature of McGraw-Hill's infringement makes it notably difficult to detect, since it involves McGraw-Hill paying for limited licenses to photographs while printing (and intending to print) copies well beyond the limits of the license. There are two cases pending on this Court's docket relating to McGraw-Hill's infringement of Grant Heilman's photographs. The first case was filed on December 23, 2016 (the "2016 Action"). The 2016 Action concerns infringements acknowledged by McGraw-Hill in a letter to Grant Heilman on October 14, 2016. McGraw-Hill was forced to admit to those infringements because they related to photographs that were the subject of a settlement between the parties in March 2016. The second case is this one. It concerns infringements that

McGraw-Hill knew or should have known about, but did not acknowledge in its October 14, 2016 letter.

McGraw-Hill claims that this lawsuit—despite being timely under the Copyright Act—should be dismissed with prejudice because it involves an improper attempt by Grant Heilman to "split" its claims between this case and the 2016 Action.  But McGraw-Hill misreads the law.  "Claim-splitting" applies only to cases concerning the same "subject matter," which in the copyright context means that the two cases concern the same *infringements*.  As the Complaint here makes clear, there is no overlap between the infringements alleged in this case and those alleged in the 2016 Action.  The 2016 Action concerns infringements acknowledged by McGraw-Hill in its October 2016 letter.  This action concerns additional infringements that McGraw-Hill did not acknowledge in that letter.  The lack of overlap between the infringements in this case and the 2016 Action requires denial of McGraw-Hill's "claim-splitting" motion.

McGraw-Hill is also incorrect to claim that the claim-splitting doctrine supports dismissal regardless of whether it applies here.  Claim-splitting is a docket management tool that allows the Court to treat related cases efficiently, whether by consolidation, a stay, or (where cases are truly duplicative or the plaintiff filed the second case to circumvent a court order) dismissal *without prejudice*.  There are undoubtedly common factual and legal issues between this case and the 2016 Action, despite the fact that they encompass separate infringements.  Those commonalities militate in favor of consolidating the two actions, certainly not dismissing this one. In fact, the leading Third Circuit case, which McGraw-Hill cites but does not analyze, suggests precisely that course in a situation where two cases are "possibly duplicative":

> When a court learns that two possibly duplicative actions are pending on its docket, consolidation may well be the most administratively efficient procedure. If the second complaint proves to contain some new matters, consolidation unlike

dismissal of the second complaint without prejudice or staying the second action will avoid two trials on closely related matters.

*Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). In fact, this case is not "duplicative" in the claim-splitting sense since none of the infringements alleged in this case were alleged in the 2016 Action, but because of the overlap of certain issues, consolidation is the proper course here.

Accordingly, McGraw-Hill's motion to dismiss should be denied, and this case should be consolidated with the 2016 Action.

## FACTUAL BACKGROUND

McGraw-Hill is a serial copyright infringer. As Grant Heilman details in its complaint, McGraw-Hill has been adjudicated an infringer by a jury and on summary judgment, and has settled various other claims of infringement. Compl. ¶ 2.

McGraw-Hill is a textbook publisher that licenses a large volume of photographs from photographers and agencies like Grant Heilman for inclusion in its books. Compl. ¶¶ 5, 9. McGraw-Hill paid for limited licenses (unlimited or broader licenses are more expensive), which had specific limits on the number of copies McGraw-Hill could print, the distribution area, the language, the length of time McGraw-Hill could use the photos, and the medium in which the photos could be reproduced. Compl. ¶ 9. After obtaining these limited licenses, McGraw-Hill essentially ignored them, printing copies without regard to the limits. Compl. ¶¶ 8-10. The complaint contains numerous examples of McGraw-Hill print overruns, including one example in which McGraw-Hill exceeded the permitted number of copies by more than one million units. Compl. ¶ 10(a).

Grant Heilman is a licensing agent for the work of various individuals, including its namesake, Grant Heilman, a prolific and well-known photographer. Compl. ¶ 4. In April 2012, Grant Heilman sued McGraw-Hill for 2,395 claims of infringement over a 16-year period.

Compl. ¶ 13.  After years of litigation, summary judgment motions, and a jury verdict in a bellwether trial finding McGraw-Hill liable for infringement, McGraw-Hill and Grant Heilman settled the case and, on March 14, 2016, filed a stipulation of dismissal.  Compl. ¶¶ 14-15, 22.  Prior to the settlement, McGraw-Hill argued repeatedly to the Court that it had put systems in place to prevent it from using unlicensed images from Grant Heilman in the future.  Compl. ¶¶ 18-20.

On October 14, 2016, McGraw-Hill wrote a letter to Grant Heilman acknowledging that, despite the settlement, McGraw-Hill had engaged in "Post-Settlement Reprinting" of Grant Heilman photographs.[1]  Compl. ¶¶ 23-24.  Although McGraw-Hill calls this disclosure "voluntary," the letter acknowledged the McGraw-Hill's conduct was "inconsistent with the terms of the [applicable] settlement agreements."  Compl. ¶ 25.  McGraw-Hill's letter claimed that it had identified infringements of "at-issue" photos, that is, photos involved in the 2012 case against McGraw-Hill prior to settlement.  Compl. ¶ 24.

Grant Heilman filed suit on December 23, 2016 to address the infringements identified in McGraw-Hill's October 14, 2016 letter.  That case remains pending before this Court at docket number 17-694 (the "2016 Action"), and is in civil suspense.  Compl. ¶ 26.

What McGraw-Hill did not tell Grant Heilman in its October 14, 2016 letter is that McGraw-Hill's post-settlement printings included *additional* uses of Grant Heilman photographs that McGraw-Hill did not disclose.  Compl. ¶¶ 28-29.  Instead, Grant Heilman identified those infringements on its own through an analysis of the licenses it had granted to McGraw-Hill relating to the books that McGraw-Hill printed post-settlement.  These additional undisclosed infringements are the subject of this case.  Compl. ¶¶ 3, 29.

---

[1] McGraw-Hill's October 14, 2016 Letter is attached hereto as Exhibit 1.

The process of identifying potential infringements by identifying past licenses between Grant Heilman and McGraw-Hill is time-consuming, and contrary to the suggestions in McGraw-Hill's motion to dismiss, did not simply identify the same photos or the same infringements. Rather, a comparison of Exhibit A in the current Complaint (identifying alleged infringements in this case) to Exhibit 3 to the Complaint in the 2016 Action[2] (identifying the alleged infringements in that case), shows that none of the 43 infringements identified in this case are duplicative of any of the infringements identified in the 2016 Action. Specifically, of the 43 infringements alleged in this case:

- 35 infringements (Dkt. No. 1-3, at rows 1-2, 4-11, 16-23, 25-34, and 36-42) relate to photographs not involved at all in the 2016 Action.

- 2 infringements (Dkt. No. 1-3, at rows 3 and 24) relate to photographs that were included in the 2016 Action, but that appeared in books that McGraw-Hill did not state contained those photos.

- 6 infringements (Dkt. 1-3, at rows 12-15, 35, and 43) relate to photographs that were included in the 2016 Action, but that were found in additional printings (identified by a different ISBN[3]) of the titles that McGraw-Hill originally disclosed.

To address these additional infringements, Grant Heilman filed this Complaint on October 10, 2019, and in its Civil Cover Sheet identified the 2016 Action as a related case. Dkt. No. 1-1.

**LEGAL STANDARD**

This is not a typical motion to dismiss under Federal Rule of Procedure 12(b)(6). Ordinarily, such a motion argues that the complaint should be dismissed because the well-

---

[2] The chart identifying infringements at issue in the 2016 Action is attached hereto as Exhibit 2.

[3] "ISBN" stands for "International Standard Book Number" and is a unique identifier for a book. The same "Title" may have multiple ISBNs in cases where the book has been reprinted with significant revisions, where it is printed in another language, or in another medium (e.g., an e-book), or for distribution in another country.

pleaded facts fail to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). McGraw-Hill, however, does not argue that the Complaint fails to state a plausible claim for copyright infringement against McGraw-Hill Global Education Holdings. Nor could it. Instead, McGraw-Hill argues that a discretionary rule against "claim-splitting" requires dismissal with prejudice regardless of whether the Complaint properly pleads copyright infringement. Thus, this case is more like those in which a defendant asserts a legal bar, such as the statute of limitations or res judicata at the motion to dismiss stage. In a case like this one, the standard is whether the bar "appears on the face of the complaint" or from the materials that may otherwise be considered at the motion to dismiss stage. *E.g.*, *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).

## **ARGUMENT**

The doctrine of claim-splitting derives from the "court's "general power to administer its docket." *Fabics v. City of New Brunswick*, 629 Fed. App. 196, 198 (3d Cir. 2015). It applies when two cases are pending at the same time and: "(1) take place in the same court; (2) with the same defendants; (3) involving the same subject matter," *McKenna v. City of Philadelphia*, 304 Fed. Appx. 89, 92 (3d Cir. 2008), and permits the court to choose the "most administratively efficient procedure" to manage the cases to avoid duplication of effort, *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977).

As the *Walton* court explained, most often the most efficient course is consolidation, which preserves the plaintiff's right to pursue non-duplicative claims while ensuring that similar issues can be decided together:

> When a court learns that two possibly duplicative actions are pending on its docket, consolidation may well be the most administratively efficient procedure. If the second complaint proves to contain some new matters, consolidation unlike

> dismissal of the second complaint without prejudice or staying the second action will avoid two trials on closely related matters. If, on the other hand, the second complaint proves to contain nothing new, consolidation of the two actions will cause no harm provided that the district court carefully insures that the plaintiff does not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed.

*Walton*, 563 F.2d at 71.

*Walton*'s reference to not allowing the plaintiff to file duplicative complaints to "expand the procedural rights he would have otherwise enjoyed" refers to instances where a plaintiff files "duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints . . . and demand for trial by jury." *Id.* (citations omitted). McGraw-Hill does not argue that Grant Heilman has sought or gained any procedural advantage from its Complaint here. Nor is there anything "duplicative" about the two complaints.

### A. This Case Does Not Involve the Same Subject Matter as the 2016 Action

In this case, the claim-splitting doctrine does not apply at all because the two complaints here involve different alleged infringements, and therefore do not concern the same subject matter. Crucially, in a copyright infringement case, separate ***infringements*** constitute separate subject matter for the purpose of the claim-splitting doctrine. A separate infringement can be the unlawful reproduction of a different copyrighted work, or a separate unlawful reproduction of the same work. For example, in *Live Face on Web, LLC v. Cremation Society of Illinois, Inc.*, 2019 WL 398938, at *6 (E.D. Pa. Jan. 31, 2019), the plaintiff filed two separate suits against the same defendant involving similar "video spokesperson software." The court nonetheless held that the cases did not involve the same subject matter because the cases involved "separate copyrights, different time periods, and different methods of infringement." *Id.* Similarly, in *Leonard v. Stemtech Int'l, Inc.*, 2012 WL 3655512, at *9 (D. Del. Aug. 24, 2012), the plaintiff filed a second action four years after the first action alleging infringement of ***one of the same photographs***

involved in the first action on a later date.  The court held that the actions did not involve the same subject matter because the infringements alleged in the second case took place separately from, and after, the infringements alleged in the first case.  *Id.*  The court ordered consolidation of the two cases for management because of their "significant commonality."  *Id.* at *11-12.

None of the infringements alleged in the Complaint in this case overlap with the infringements alleged in the 2016 Action.  Specifically, the Complaint here alleges 43 infringements, detailed in Exhibit A to the Complaint (Dkt. No. 1-3).  As shown below, there is no overlap between them and the infringements alleged in the 2016 Action:

| **Alleged Infringement (by Row # as alleged in Exhibit A)** | **Difference Between this Case and 2016 Action** |
|---|---|
| Rows 1-2, 4-11, 16-23, 25-34, and 36-42 (35 infringements) | None of the infringed photographs are included in the 2016 Action. |
| Rows 3 and 24 (2 infringements) | Photographs included in 2016 Action, but reproduced in a different book than the ones McGraw-Hill disclosed that they were included in.  For example, the photograph in row 3 (with the identifier O10C 05 91C0) was identified by McGraw-Hill as having been illegally reprinted in the books "Concepts of Biology," "Essentials of Biology," and "Inquiry Into Life."  Those infringements are included in the 2016 Action. Ex. 2, at rows 39-41.  The Complaint in this case alleges that the photograph was also illegally reprinted in a different book by a different author, "Life."  Dkt. No. 1-3, at row 3. |
| Rows 12-15, 35, and 43 (6 infringements) | Photographs included in 2016 Action, but reproduced in additional ISBNs of titles that McGraw-Hill disclosed.  For example, the photograph in row 35 (with the identifier O 0 GLE06 11A0) was identified by McGraw-Hill as having been illegally reprinted in the book "Concepts of Biology" ISBN 1259216489.  That use is included in the 2016 |

8

|  | Action. Ex. 2, at row 38. The Complaint in this case alleges that the photograph was also illegally reprinted in the same title under ISBN 007299522X. |
|---|---|

Accordingly, for 35 of the infringements at issue here, the work alleged to be infringed is not included at all in the 2016 Action. *See Live Face on Web*, 2019 WL 398938, at *6 (holding the two cases contained different subject matter between they involved "different copyrights").[4] For the remaining 8 infringements, which involve works that are at issue in the 2016 Action, the allegations here are for unlawful reproductions of the photograph that are not already at issue in the 2016 Action—either in different textbook titles or in different printings of the same title. *See Leonard*, 2012 WL 3655512, at *9 (holding that new infringement of same photograph involved in prior action was not the same "subject matter"). Under *Live Face* and *Leonard*, these separate infringements are not the same subject matter, and the claim-splitting doctrine does not apply.

McGraw-Hill cannot dispute the facts above, so it instead relies on the fact that the 2016 Action and this one involve the "same textbook titles." (Dkt. No. 8-1, at 6.) But McGraw-Hill cites no law to support its novel assertion that an overlap in "textbook titles" implicates the claim-splitting doctrine. As the cases above demonstrate, the correct inquiry is whether the alleged *infringements* are duplicative. In this case, they are not.

---

[4] In registering its photographs with the Copyright Office, Grant Heilman often registers multiple photographs on the same registration application, meaning that multiple photographs may have the same Copyright Registration number. *See, e.g.*, Dkt. No. 1-3, at row 1, 12 (different photographs with the same registration number). This is a permissible practice referred to as "group registration" under the regulations to the Copyright Act. *See* 37 C.F.R. § 202.4(i) (allowing for the "group registration of published photographs" subject to certain requirements). Under the regulations, each photograph is considered a separate copyrighted "work," even though it is included on a group registration. 37 C.F.R. § 202.4(n) ("When the Office issues a group registration under paragraphs . . . (i) . . . of this section, the registration covers each work in the group and each work is registered as a separate work.")

9

Finally, McGraw-Hill attempts a sleight of hand, arguing that the Complaint in this case should be dismissed merely because it relies on facts that were "available to [Grant Heilman] when it filed" the 2016 Action. (Dkt. No. 8-1.) But McGraw Hill cites no authority for the proposition that Grant Heilman was required to allege all infringements by McGraw Hill when it filed the 2016 Action. That Action concerned those infringements identified by McGraw Hill; this one concerns infringements not identified. McGraw-Hill is therefore wrong to claim that this case is "based on the same October 2016 disclosure by [McGraw-Hill] that a certain number of textbooks containing [Grant Heilman's photos were reprinted after the parties had settled." Dkt. 8-1, at 2. In fact, this case concerns infringements that McGraw-Hill *did not disclose* in its October 2016 letter and that Grant Heilman subsequently identified. Compl. ¶ 2.

Accepting McGraw-Hill's argument would also have the effect of incentivizing McGraw-Hill's bad behavior. When it disclosed the titles that it had printed post-settlement, McGraw-Hill surely knew or should have known that the titles included additional photographs that it had licensed from Grant Heilman that it did not include in its letter. If McGraw-Hill can now claim that Grant Heilman is barred from raising these additional infringements, then defendants like it would have an incentive to acknowledge a small number of infringements, knowing that a plaintiff who promptly brought suit based on that information would be forever barred from raising other infringements by the same defendant. Such a rule makes no sense and, not surprisingly, is not the law.

The cases McGraw-Hill relies upon for its broad claim that Grant Heilman is barred from raising any infringement that it theoretically could have known about at the time of the 2016 Action do not support McGraw-Hill's position. Instead, they all involve plaintiffs who filed a second complaint for the improper purpose of circumventing the court's denial of its motion to

amend the complaint in the first action.  *See McKenna v. City of Philadelphia*, 304 Fed. Appx. 89, 93 (3d Cir. 2008) ("McKenna admits that his *McKenna II* complaint was specifically intended to 'address[] a denial to amend.'"); *Yost v. Anthem Life Ins. Co.*, 2019 WL 3451507, at *5 ("Finally, the Court finds *Walton's* directive concerning circumvention of rules pertaining to amendment of complaints particularly applicable here given that Plaintiff filed *Yost II* on July 31, 2018—the same day as Plaintiff's counsel withdrew Plaintiff's Motion for Leave of Court to Amend the Complaint . . . in *Yost I*."); *Prewit v. Walgreens Co.*, 2013 WL 6284166, at *5 (E.D. Pa. Dec. 2, 2013) ("As I have already denied plaintiff's motion to amend, a motion for reconsideration was his only means to seek to being additional allegations before the court."). McGraw-Hill does not even argue, much less demonstrate, that Grant Heilman's Complaint in this case is an attempt to circumvent an order of the Court in the 2016 Action.  *See Live Face*, 2019 WL 398938, at *6 ("Nor have Defendants pointed to evidence that Plaintiff filed this lawsuit to circumvent a denied request for leave to amend in the earlier-filed case.")

Simply put, the claim-splitting doctrine that McGraw-Hill relies on does not apply here. The infringements alleged in this action are distinct from the ones alleged in the 2016 Action, and therefore this case does not cover the same "subject matter" for purposes of the claim-splitting doctrine.  Moreover, this is not a case where Grant Heilman has filed a second complaint in order to circumvent a court ruling denying leave to amend, or to gain some other procedural advantage.  Accordingly, McGraw-Hill's motion to dismiss should be denied on the ground that the claim-splitting doctrine does not apply here.

      **B.**    **Regardless of Whether the Claim-Splitting Doctrine Applies, the Proper Result is Consolidation, Not Dismissal**

The claim-splitting doctrine is a docket management tool, rather than a substantive rule of claim preclusion.  Thus, McGraw-Hill's claim that "a district court should apply the doctrine of

claim-splitting to dismiss a second-filed complaint with prejudice" is the complete reverse of what the law actually is. Dkt. 8-1, at 6. The case McGraw-Hill relies on, *Fabics v. City of New Brunswick*, 629 Fed. Appx. 196, 198 (3d Cir. 2015), says the opposite of what McGraw-Hill represents: "In *Walton*, we noted that a court faced with a second, duplicative complaint, could stay the second action, consolidate it with the first, or dismiss the second complaint ***without prejudice***." The distinction is important because the purpose of the claim-splitting doctrine is not to deny the plaintiff the right to litigate timely filed new claims; rather, it is to allow the court to pursue the "most administratively efficient procedure" when faced with complaints that concern similar or overlapping subject matter.[5] *Walton*, 563 F.2d at 71. Accordingly, the court should choose the path that both preserves the plaintiff's right to pursue its claims while making sure that the plaintiff "does not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed." *Id.*

As *Walton* explained, the "most administratively efficient procedure" to meet these goals is typically consolidation of the second-filed case with the first. "If the second complaint proves to contain some new matters, consolidation unlike dismissal of the second complaint without prejudice or staying the second action will avoid two trials on closely related matters. If, on the other hand, the second complaint proves to contain nothing new, consolidation of the two actions will cause no harm . . . ." *Id.* *Walton*, far from condoning dismissal with prejudice, affirmed the consolidation of two overlapping complaints, because consolidation allowed the district court to treat the similar matters together while ensuring that the second complaint was not used to revive

---

[5] The court in *Fabics* affirmed even though the district court had entered dismissal with prejudice, but only because on the same day the court entered dismiss, the plaintiff was granted thirty days to file an amended complaint in the first action, and therefore could assert his new claims and new parties in that action. *Fabics*, 629 Fed. Appx. at 198-99.

the right to a jury trial that the plaintiff had waived while litigating the first case. *Id.* at 71-72. That is the proper course here.[6]

Another case cited by McGraw-Hill, *Leonard v. Stemtech*, likewise highlights the benefits of consolidation for a court dealing with similar but new claims in a second-filed complaint. There, the plaintiff sued for copyright infringement of two of its photographs, and later amended its complaints to assert two additional photographs, for a total of four. *Leonard*, 2012 WL 3655512, at *1-2. Three years later, the plaintiff filed a new complaint, alleging additional, more recent infringements of one of the same photographs involved in the first case. *Id.* at 3. As explained above, the court held that the distinct infringements meant that the cases did not contain the same subject matter for claim-splitting purposes. However, the court also concluded that the "significant commonality between the claims" in the two cases meant consolidation would "best serve the administration of justice," even though the first case was six months from trial and the parties would need to conduct discovery on the infringements alleged in the second complaint. *Id.* at *12.

This case should be treated like the *Leonard* case. Here, Grant Heilman has alleged infringements of different photographs (in the case of 35 infringements), or of infringement in different printings (8 infringements) than those involved in the 2016 Action. But there is significant efficiency to be gained from consolidating the cases for trial. The cases involve many

---

[6] The other two options mentioned in *Fabics*—a stay and dismissal without prejudice—are not appropriate for this case. Dismissal without prejudice is not appropriate because McGraw-Hill has made clear that it believes Grant Heilman knew or should have known about these infringements as of the date of McGraw-Hill's October 14, 2016 letter. Dkt. No. 8-1, at 2. Because this case was filed on October 10, 2019, dismissal without prejudice, in which Grant Heilman would be required to re-file its complaint later, would only lead to litigation over the applicability of the Copyright Act's three-year statute of limitations, a result that should be avoided. A stay, only to re-start the case at a later date, would lose the efficiency gain of consolidation and lead to "two trials on closely related matters." *Walton*, 563 F.2d at 71.

of the same textbooks already involved in the 2016 Action, and similar infringing conduct (unlicensed printing), so there will be overlapping legal and factual issues. *See id.* (relying on similarities to support consolidation). Indeed, that is the purpose of the "related case" check box on the civil cover sheet—so that related cases get assigned to the same judge for efficient case management.

Moreover, McGraw-Hill has not claimed that it would be prejudiced by consolidation, nor could it. The 2016 Action has been in civil suspense for about a year, and consolidation combined with restoring the case to the active docket would allow the parties to confer on a scheduling order to conduct discovery, and to move toward trial on all of Grant Heilman's claims. Accordingly, the Court should deny McGraw-Hill's motion to dismiss and order consolidation of this case with the 2016 Action.

## CONCLUSION

Grant Heilman's Complaint in this matter is timely, and raises infringements that are not the same as those in the 2016 Action. Accordingly, McGraw Hill's motion should be denied, and this case should be consolidated with the 2016 Action so that they can be managed together.

Dated: January 15, 2020

                                                                                                Respectfully submitted,

                                                                                                /s/*David J. Wolfsohn*
                                                                                                David J. Wolfsohn
                                                                                                djwolfsohn@duanemorris.com
                                                                                                Tyler R. Marandola
                                                                                                tmarandola@duanemorris.com
                                                                                                DUANE MORRIS LLP
                                                                                                30 S. 17th Street
                                                                                                Philadelphia, PA 19103
                                                                                                Tel:    215-979-1000
                                                                                                Fax:   215-979-1020

                                                                                                *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Tyler Marandola, hereby certify that on January 15, 2020, I caused to be served via the Court's electronic filing system, a true and correct copy of the foregoing Plaintiff's Opposition to Defendant McGraw-Hill Global Education Holdings' Motion to Dismiss on all counsel of record.

/s/*Tyler Marandola*